## LEHMAN *et al. v.* FELD.

*(Circuit Court, S. D. Mississippi.* January 15, 1889.)

1. GAMING—CONTRACTS FOR FUTURE DELIVERY—CONFLICT OF LAWS.

Contracts for the future delivery of cotton, made by a commission merchant in New Orleans, to be performed there, for his principal, residing in the state of Mississippi, are governed by the laws of the state of Louisiana, and, if valid in that state, will be enforced by the circuit court of the United States in the state of Mississippi.

2. SAME—INTENT—BURDEN OF PROOF.

A contract for the future delivery of cotton is valid and binding unless shown by those challenging its validity that it was mutually agreed and understood by the parties to the contract when it was made that there was to be no delivery of the property, but that only the differences in the price were to be paid at the time the contract by its terms required delivery should be made.

8. SAME—CUSTOMS AND USAGE—VALIDITY.

The rules and regulations adopted by the New Orleans Cotton Exchange in the settlement and substitution of contracts for the future delivery of cotton, when not used to promote a gambling transaction, are valid and legal, and are binding upon all persons familiar with such rules and regulations, or chargeable with knowledge thereof, when they employ members of said exchange to buy or sell on the floor of said exchange cotton for future delivery, and who in good faith so buy and sell in accordance with the said rules and regulations.

4. SAME—FACTORS AND BROKERS—RIGHT TO COMMISSION.

A commission merchant, who in good faith buys and sells cotton for future delivery under the directions of his principal, without knowledge or reason to believe that said principal had no intention to deliver or receive said cotton, but only expected to pay the differences in the price at the maturity of the contracts of purchase or sale, may recover from said principal compensation for services performed, and money advanced at his request, notwithstanding the existence of such illegal intent on the part of the principal.

5. SAME—RIGHT TO DEMAND MARGINS.

When, under the rules and regulations of the New Orleans Cotton Exchange, a commission merchant becomes the guarantor for the performance of the contract entered into by him for his principal, he has the right to demand margins from said principal to secure him against loss on account of said contract, and to close out said contract in the event the principal fails to remit said margins on demand, and said commission merchant may, upon the default of his principal in the remittance of said margin when so demanded, close out said contract, and recover the losses sustained by him, although the party with whom the commission merchant dealt for his said principal has made no demand for any margin.

6. PRINCIPAL AND AGENT—LIABILITY OF AGENT.

Where the agent, at the time of making a contract, discloses the name of his principal, he is not personally liable or bound to those who are thus notified that he acts as agent, for the default of the principal.

*(Syllabus by the Court.)*

At Law.

*Miller, Smith & Hirsh,* for plaintiffs.
*McCabe & Anderson,* for defendants.

HILL, J. The questions for decision are presented by a motion for a peremptory instruction to the jury to find for the plaintiffs, and a motion for a similar instruction to find for defendant. This action is brought

by the plaintiffs to recover from the defendant the indebtedness stated in the declaration, alleged to be due them for commissions in making the purchase of contracts for cotton to be delivered at a future time, and for money expended by them on their guaranty that defendant would comply with the contracts. To the charges made in the declaration the defendant has pleaded the general issue, and given notice in writing of special defenses. The correspondence between the parties and the other written and uncontradicted evidence adduced establish the following facts:

The plaintiffs are, and have been for a number of years past, cotton factors and commission merchants doing business in the city of New Orleans, and are members of the New Orleans Cotton Exchange, and are engaged, as such cotton factors and commission merchants, in making purchases and sales of cotton to be delivered at a future time, on behalf of and for the interest of their principals or customers, under the rules and regulations prescribed by that institution, to be compensated by the commissions thereby allowed. These rules and regulations do not require the members purchasing or selling on the floor of the exchange to disclose the names of those for whom they sell or purchase, but each member or firm making such sales or purchases must guaranty, and become personally bound for, the performance of all contracts so made, as though each was a principal, instead of an agent. The members of the exchange may at stated times, or whenever it is agreed upon between themselves, "ring out" or "close out" the said contracts of purchases or sales, by striking a balance, or setting off one contract against another, so as to substitute one for the other; the seller being still prepared and liable to deliver, and the purchaser to receive and pay for the same quantity of cotton, of the grade and at the price stipulated in the original contracts at the time stated for delivery; each being bound to the other upon the guaranty assumed, but on behalf of the unknown principals. These rules and regulations further provide that, to secure the performance of the contracts by each individual or firm so contracting a margin of one dollar per bale shall be deposited at the time of the contract, and shall be renewed from time to time, as the rise or fall in price may require, according to the conditions prescribed in these rules and regulations, by which all the members are governed. The defendant had for some years previous to the dealings with the plaintiffs stated in the pleadings made contracts for the purchase and sale of cotton for future delivery through other cotton factors and commission merchants belonging to and doing business in the Cotton Exchange of New Orleans, and was required by them to put up the necessary margins, or furnish the money for said purchases or sales, and that, when sales were made at a loss, he was required to pay said loss. He was a member of the Vicksburg Cotton Exchange, had visited the New Orleans Cotton Exchange several times, and was well informed as to all the technical terms and phrases used by the members of the said New Orleans Cotton Exchange in making these contracts, and in transacting business under the rules and regulations thereof, by which these purchases and sales were made, and therefore must be presumed to

have understood them, and the duties, rights, and obligations of the members of said New Orleans Cotton Exchange to each other in relation to the contracts made by them for their principals, and of the obligations of the principals to them. On the 23d day of November, 1887, defendant, by letter, applied to the plaintiffs to ascertain the commissions charged by them for making purchases or sales of cotton futures, to which plaintiffs responded stating the commissions they would charge; after which defendant from time to time directed the plaintiffs to make purchases of cotton for future delivery at the stated prices per pound, to be delivered 800 bales in April, 300 bales in May, and 800 bales in June, 1888, in all 1,900 bales, on behalf of himself and others, but did not state the names of the other persons for whom purchases were requested to be made, except the name of Philip Feld; and he was therefore liable for the contracts of those whose names were not given, as well as for those purchased on his own account. Plaintiffs, in compliance with said instructions, made contracts of purchase at different times for the 1,900 bales, to be delivered at the time and for the price directed by defendant. The defendant advanced the money for the deposits of the margins required when these contracts were made, and continued to advance the money for that purpose, when called for, until the 2d day of March, 1888. On that date a further decline in the price of cotton occurred, and thereupon plaintiffs wrote to defendant, notifying him of the decline and requiring a further advance of $2,000 to make the margins good. The letter was received by defendant on Saturday, the day after it was written. To this demand no response was made. At the call on Monday morning a further decline took place, and plaintiffs telegraphed defendant to know if he had made the remittance called for in the letter, to which defendant made no reply. On the noon call of the same day the price was still tending downward, and the plaintiffs again wired defendant that, unless the margin called for was immediately forwarded, they would be compelled to close out the contracts to save themselves. Defendant declined to make the advance called for, and the plaintiffs testified that they closed out the contracts held by them for defendant at a loss of the amount stated in the declaration. Plaintiffs had closed out the original contracts with other parties, according to the rules and regulations of the cotton exchange, some time before this last margin was called for. The testimony of the plaintiffs is that they had purchased, or obtained upon adjustment of balances, as provided by the rules and regulations, other cotton contracts of the same grade, in the same quantity, to be delivered at the same time, and to be paid for at the same price, and held the same to replace those originally purchased, and it is these substituted contracts which were sold or closed out, resulting in the loss to recover which this suit is brought.

It is insisted on the part of the defendant that the proof does not show the plaintiffs set off on their books and appropriated these substituted contracts in place of the original contracts, so as to render those making them liable to the defendant; and hence, at the time of the alleged sale, producing the loss for which the action is instituted, plaintiffs held no

contracts on behalf of defendant or those for whom he acted. I am of the opinion that, if the plaintiffs then held them for the purpose of meeting contracts of purchases made for the benefit of the defendant, it was not necessary to place them on their books, to enable them to dispose of the same to protect themselves against the losses incurred by reason of their guaranty of the performance of these contracts of purchase. But it was necessary that the plaintiffs should have had contracts for the delivery of cotton of the same quantity, at the same price, and at the same time, provided in the original contracts of purchase,—contracts corresponding in all respects with the original contracts had they remained uncanceled and in force; in other words, contracts to be substituted for the original contracts.

The contracts were all made in, and were to be performed in, New Orleans, and consequently must be governed by the laws of the state of Louisiana then in force. Story, Confl. Laws, (8th Ed.) §§ 283, 285; *Ward* v. *Vosburgh,* 31 Fed. Rep. 12. The supreme court of the state of Louisiana has held valid the contracts made by the members of the New Orleans Cotton Exchange, acting as factors and commission merchants for their principals, according to the rules and regulations of the said cotton exchange, and not in violation of the laws of the state. *Conner* v. *Robertson,* 37 La. Ann. 815. These rules and regulations recognize the right and duty of the members to settle balances with each other, as before stated, so that the cancellation of the original contracts was not a violation of the duty and obligation of the plaintiffs towards those for whom they dealt. But this suit is not brought to enforce any of these contracts, or for damages for non-performance of them. It is a suit by the factors and the commission merchants against their principal, to recover commissions and money alleged to have been paid out for their principal, and necessarily expended to protect themselves against loss upon their guaranty of the performance of the contract made by them on behalf of the defendant; so that only the obligations and liabilities existing between them as such need be considered. The plaintiffs, being guarantors for the receipt of the cotton and the payment of the purchase money at the price fixed by the contracts, had a right to call upon the defendant from time to time for sufficient amount of money to make good the margins prescribed by the rules and regulations of the exchange, as well as for their own protection, and this right existed whether the other parties to the contract called for them or not, as they were authorized to do under the guaranty of the plaintiffs, and the plaintiffs would not have been relieved or discharged from the obligations of said guaranty by the failure to demand margins. So that, when defendant was notified to make the advances demanded, and failed and refused to do so, the plaintiffs were authorized to sell the contracts held by them for defendant, to protect themselves against further loss and liability upon their guaranty; and, if the sale resulted in a loss not covered by the former advances. they have a right to recover the amount from the defendant, whether the loss was paid in actual money, or by a settlement of balances with those holding the contracts. Therefore, upon this ques-

tion, the only fact to be ascertained is whether or not at the time of the alleged sale or closing out of these substituted contracts the plaintiffs held such contracts for the delivery of cotton of the quality and quantity, and at the price and time provided in the original contracts, and, if so, whether these contracts were sold or closed out at a loss not covered by the former advances, and which was paid in cash or by a settlement of balances. These are questions of fact proper to be determined by the jury from the evidence produced before them.

But it is urged as a complete defense to this action that it was a gambling transaction, and, whatever liability might otherwise exist, these contracts are void against public policy, and not enforceable in this or any other court. As before stated, this is not a suit to enforce any of these contracts, but for services performed and money paid out for the defendant. But if the contracts were gambling contracts, and the plaintiffs knew it, or—which is the same thing—had reason when the contracts were made to know or to believe that they were gambling contracts, and with this knowledge aided in making them, they would not be entitled to recover anything out of them, nor would the defendant be entitled to recover anything from them on account of said contracts, but they would be left where they stand, all being equally guilty. Under the law as settled by the supreme court of the United States, with few exceptions, these contracts for the future delivery of personal property are valid and binding, unless shown by those challenging their validity to be gambling and illegal contracts. *Irwin* v. *Williar*, 110 U. S. 499, 4 Sup. Ct. Rep. 160; *Clay* v. *Allen*, 63 Miss. 426; *Conner* v. *Robertson, supra.* To establish that they are gambling and invalid contracts, the proof must show that it was mutually agreed and understood by the parties to the contracts when they were made that there was to be no delivery of the property, but only the differences in the price were to be paid at the time the contracts by their terms required that delivery should be made. This agreement and understanding of the parties may be shown by any sufficient competent evidence; but, if only one party intends that no delivery of the property shall be made and only the differences paid, the contract will still be valid, and may be enforced by the other party to it, unless the party intending that the delivery shall be made knows at the time, or has sufficient reasons to believe, that the other party does not intend to comply with his part of the contract. But this knowledge must be satisfactorily established by the proof, and cannot be presumed or implied from slight circumstances. The defendant, in his testimony, states that he did not inform the plaintiffs that he had no intention of delivering the cotton contracted for, or to be contracted for; and one of the plaintiffs testified that the plaintiffs had no knowledge or reason to believe that the defendant, or those for whom he acted, did not intend to receive the cotton and pay for it, according to the terms of said contracts made and to be made. The fact that a large quantity of cotton is being constantly contracted for to be delivered in the future, and of which no delivery is made, but only the differences in price paid, is not competent evidence that such was the understanding between the parties

to these contracts. *Roundtree* v. *Smith*, 108 U. S. 269, 2 Sup. Ct. Rep. 630. This being so, the jury will be instructed that there is no evidence in the case to establish that the contracts between the parties were gambling and invalid contracts.

It is insisted upon the part of the defendant that the plaintiffs should have notified the defendant of the decline in price, and demanded the advance by telegraph on Saturday; but the defendant had personally instructed them not to telegraph, but to write, when more advances were required, and plaintiffs were therefore acting in accordance with the express directions of defendant, and this defense cannot prevail. It is also insisted that plaintiffs should have notified defendant of each sale and exchange of contracts. This, under the rules and regulations of the exchange, was not necessary; and for the reasons already stated defendant was put upon notice, and charged with knowledge of the said rules and regulations and the manner and mode of conducting business thereunder, and is bound by them in the transactions made by the plaintiffs in accordance with said rules and regulations. The result is that both motions must be overruled, and the questions of fact must be submitted to the jury on the issues as above stated, under instructions to be given them.