H. W. CHIPMAN and James Chipman d/b/a Chipman Brothers, Plaintiffs,

v.

J. W. LOLLAR et al., Defendants.

No. EC 6951–S.

United States District Court
N. D. Mississippi, E. D.

Oct. 9, 1969.

J. O. Sams, Jr., of Sams & Sams, Columbus, Miss., for plaintiffs.

Robert D. Patterson, of Patterson, King & Lee, Aberdeen, Miss., for International Minerals and Chemical Corp. and Robert Fulgham.

Jack F. Dunbar, of Sullivan, Dunbar & Smith, Clarksdale, Miss., for C. F. Vincent.

Dewitt Hicks, of Burgin, Gholson & Hicks, Columbus, Miss., for J. W. Lollar and James B. Lollar.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This case is before the Court on plaintiffs' Motion To Remand To State Court, and is considered on the record, briefs and oral argument of counsel.

Plaintiffs, H. W. Chipman and James Chipman, d/b/a Chipman Brothers, adult resident citizens of Leflore County, Mississippi, initiated this suit on July 12, 1969, in the Chancery Court of Lowndes County, Mississippi, against J. W. Lollar, an adult resident citizen of Lowndes County, Mississippi, James B. Lollar, an

adult resident citizen of Quitman County, Mississippi, C. F. Vincent, an adult resident citizen of Coahoma County, Mississippi, Robert Fulgham, an adult resident citizen of Clay County, Mississippi, and International Minerals and Chemical Corporation, a corporation organized and existing under and by virtue of the laws of the State of New York, having its principal place of business in the State of Illinois, but authorized to do and doing business in the State of Mississippi (hereinafter referred to as IMC).

The action was timely and properly removed to this Court by IMC, who claimed the right to do so under the provisions of 28 U.S.C. §§ 1332 and 1441(c).[1]

Chipman Brothers, on March 5, 1968, entered into four separate agricultural leases with defendants J. W. Lollar, James B. Lollar and C. F. Vincent, for approximately 3000 acres of land situated in Lowndes County, Mississippi. The leases covered the crop years 1968 and 1969.

Two of the leases entered into by Chipman Brothers were with J. W. Lollar; one was with J. W. Lollar and James B. Lollar, and the other was with J. W. Lollar and C. F. Vincent. The leases were similar for all practical purposes, but were separate and distinct documents. J. W. Lollar acted in his own behalf and as agent of James B. Lollar and C. F. Vincent in negotiating the leases with Chipman Brothers. It is clear from facts set forth in the complaint that while J. W. Lollar acted for the three landowners in the transaction, when the matter was finally determined the obligations of the three landowners were separate and distinct, except in cases where the land involved is jointly owned.

Chipman Brothers allege in the complaint that the transaction should be considered as one agreement and one transaction for the purpose of the litigation, although the leases upon which the suit is bottomed were separate and distinct documents and one bears no relation to the others.

■■ In measuring the rights of parties to a written contract or conveyance, which, on its face, is unambiguous and expresses an agreement complete in all of its essential terms, the writing will control. Fuqua v. Mills, 1954, 221 Miss. 436, 73 So.2d 113; Miss., 73 So.2d 928. Any discussions or negotiations leading up to clear and unambiguous contracting documents are merged therein and extinguished thereby, Continental Gin Company v. Freeman, U.S.D.C.N.D.Miss., Greenville Division, 1964, 237 F.Supp. 240, affirmed 381 F.2d 459, rehearing denied, 384 F.2d 365.

■ The leases involved in the case sub judice are clear, complete and unambiguous, and cannot be united, one with the other, and considered as one transaction, as Chipman Brothers contend, to form the base for litigation involved in the case sub judice.

The lease between J. W. Lollar and C. F. Vincent and Chipman Brothers contained the following provision:

"(5) It is further understood and agreed between the parties that the LESSEES will burn, repile and clean the land for cultivation to the LESSORS' satisfaction. After the crops

---

1. IMC contends that the complaint filed by plaintiffs in the State Court states a separate and independent claim or cause of action against it, which would be removable if sued upon alone, which is joined in the complaint with one or more otherwise non-removable claims or causes of actions and that for this reason, the cause is removable under 28 U.S.C. § 1441(c), which provides:

"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

It is clearly shown by the complaint that the matter in controversy between plaintiffs and IMC exceeds the sum or value of $10,000. exclusive of interest and costs, and, is between citizens of different states. (28 U.S.C. § 1332)

on said land have been planted, the LESSEE will present a bill to the LESSORS for the expense of said burning, repiling and clearing, which said bill will itemize and specify in detail the actual expenses incurred by the LESSEES in so preparing the land. Upon receipt of said bill and upon satisfaction by the LESSORS that said land has been satisfactorily burned, repiled and cleared, said LESSORS will reimburse the LESSEES for the expenses incurred."

Chipman Brothers contend that defendant Vincent was required by the terms of his lease to clear certain lands included in the lease so that they might farm the land in 1969; that Vincent failed to clear approximately 260 acres of the land; and that Vincent's breach of the contract caused them to suffer a loss of $13,000.00 in gross revenue. Chipman Brothers demanded judgment against Vincent for this sum. The Court is unable to find any provision in the lease concerning the clearing of land, except the one hereinbefore set forth. While the quoted paragraph of the lease provides that Vincent and J. W. Lollar, lessors in the lease, will pay the costs of cleaning and clearing the land, it expressly fixes the duty to perform the work upon lessee. It is difficult to understand Chipman Brothers' position on this issue, but, regardless of this, such claim or right of action as exists in favor of Chipman Brothers exists against J. W. Lollar and Vincent, and not against any other defendant. The demand for judgment against Vincent alone refutes any contention to the contrary.

One of the leases of J. W. Lollar, the lease of J. W. Lollar and James B. Lollar, contain the provision with reference to cleaning and clearing land which is incorporated in the Vincent lease. The Court's discussion of the Vincent lease, supra, applies with equal force to these leases. The complaint alleges that J. W. Lollar is indebted to Chipman Brothers pursuant to the provisions of the leases, in the sum of $13,687.50, for labor and material used in cleaning and clearing land, including rental not yet paid of $5,000.00. The demand for judgment on this cause of action is for the aforesaid sum against defendants, J. W. Lollar and James B. Lollar.

If Chipman Brothers have a claim or right of action against these defendants it is based on the leases executed between the parties and such a claim or right of action is separate and apart from any claim or right of action which Chipman Brothers may have against IMC.

Chipman Brothers allege that they made known to J. W. Lollar, when negotiating the lease agreements, that they would need financing for their crops, if they should lease the land; that a secured bank loan of $50,000.00 was negotiated by Lollar for Chipman Brothers, but that this amount of money was not sufficient to include the fertilizer needed by Chipman Brothers; that J. W. Lollar recommended defendant IMC as a reliable source from which fertilization of the land for the crop year might be obtained; and that Lollar made such statements as "he had a fertilizer company", for them "not to worry", "he would see that the fertilizer was placed on the land", "that they knew the land", "that they would properly apply the fertilizer"; and "that they were the only company to do business with".

The parties inserted a provision in each of the leases, as follows:

"'(6) It is further understood and agreed between the parties hereto that all soil on the leased lands will be tested each crop year by Roy Fulgham or some other competent and qualified employee of International Minerals and Chemical Corporation of Tupelo, Mississippi. It is further understood and agreed that the fertilizer recommendations of International Minerals and Chemical Corporation as aforementioned will be strictly followed and complied with by LESSEES with the exception that the LESSEES may use their own dis-

cretion as to the necessity and amount of nitrate fertilizer, if any, to be used on said lands.' "

Chipman Brothers further allege that Lollar sent defendant Robert Fulgham, local agent of IMC, to see them about the fertilizer, and after some negotiation with Fulgham they made an oral contract with IMC through Fulgham to apply fertilizer to the land during the crop year 1969. It is not necessary for an understanding of this opinion that the details of this alleged agreement be stated herein. Sufficient it is to say that Chipman Brothers charge that IMC defaulted in the performance of this agreement, to their damage in the sum of $70,000.00. Demand for a judgment against IMC and their agent Fulgham in the said sum is made in the complaint.

While Chipman Brothers allege that the contract with IMC was negligently breached by its agent Fulgham, and that their claim or cause of action against IMC is one sounding in tort rather than contract, for which the agent may be held jointly liable with the master, it is clear to the Court that the facts well-pleaded, as distinguished from the conclusions reached by the pleader, state a cause of action sounding in contract rather than in tort.

As above indicated the complaint seeks a judgment against C. F. Vincent for $13,000.00, one against Robert Fulgham and IMC for $70,000.00; one against J. W. Lollar and James B. Lollar for $13,687.50, plus prepaid rent not reimbursed; and a decree of cancellation of the lease contracts.

IMC has removed this action from the State Court to this Court on the theory that the complaint does not state a cause of action against its agent Fulgham, and that the litigation between Chipman Brothers and IMC involves a separate and independent claim or cause of action, which would be removable if sued upon alone; thus, the action is subject to removal pursuant to 28 U.S. C. § 1441(c).

On the issue of Fulgham's personal liability, making him a proper or necessary party to the suit, Chipman Brothers argue that the complaint states a good cause of action against Fulgham in that the complaint charges that Fulgham, as the agent and servant of IMC, failed to run a proper soil analysis, and was negligent in not furnishing the fertilizer for the land and/or making an improper application thereof, pursuant to the terms of the agreement of Chipman Brothers with IMC. These facts, they argue, are sufficient to hold Fulgham personally liable.

The facts properly pleaded in the complaint charge that Fulgham, as the agent and servant of IMC, entered into a certain contract with Chipman Brothers whereby IMC agreed to make a soil analysis of the farm land covered by the aforesaid leases, and properly treat the land with fertilizer; and that Fulgham breached the contract in that he did not make the soil analysis, and either failed to furnish the fertilizer, or improperly applied that which was furnished. In short, the complaint charges a breach of contract on the part of IMC, which was occasioned through the acts or failure to act of Fulgham, its agent. It is true that the charge is made that such actions on Fulgham's part were negligently done, but, this assertion is a conclusion of the pleader.

■ Where a complaint clearly sounds in contract the fact that negligence is also alleged will not affect or change the character of the action. 1 C.J.S. Actions § 49.[2]

2. Other authorities which support the Court's decision that the case sub judice is an action sounding in contract, insofar as IMC is concerned, are: Prosser, Law of Torts, 3rd Ed. Ch. 18, § 93, wherein it is said:

"The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise

■ In sum, the Court holds that Chipman Brothers' claim or right of action against IMC is bottomed on a breach of contract and is not one sounding in tort; that IMC acted in the transaction with Chipman Brothers through its duly authorized agent, Fulgham, whose connection with IMC was fully disclosed to Chipman Brothers.

This is not an action which concerns an agent acting and binding himself personally, in a transaction for the benefit of an unknown and undisclosed principal. *Here* the principal was fully known and disclosed.

Chipman Brothers rely upon a line of authorities which hold that a servant may be held jointly and severally liable with his master for a tort committed by him in the performance of his master's business. While such is certainly a correct principle of law, it has no application to the facts in the case sub judice.

Here, the suit is for damages because of a breach of contract by a master through its servant.

■■ The generally accepted rule is aptly stated in 3 C.J.S. Agency § 215 that "an authorized agent for a disclosed principal, in the absence of circumstances showing that personal responsibility was incurred, is not personally liable to the other contracting party". To the same effect is 3 Am. Jur.2d § 393, Page 654. This rule is applicable to contracts made in Mississippi.[3]

In the case sub judice there are no circumstances which in any manner establish the assumption of personal responsibility by IMC's agent Fulgham.

■■ The Court holds that the complaint does not state a cause of action against IMC's agent Fulgham; that he has been improperly joined as a defendant; and that his joinder cannot act

to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. They may be owed to all those within the range of harm, or to some considerable class of people. Contract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract * * *.

The line of division which developed quite early was that between 'nonfeasance' which meant not doing the thing at all, and 'misfeasance', which meant doing it improperly. Much scorn has been poured on the distinction, but it does draw a valid line between the complete nonperformance of a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort. In general the courts have adhered to the line thus drawn; and a failure even to begin or attempt performance of an agreement to lend money, to employ the plaintiff, to furnish transportation, to deliver goods ordered, to furnish light for a room, to obtain the dissolution of an injunction and permit the plaintiff to proceed with the construction of a road, or to attend

as a physician, all are held to amount to mere breaches of contract, for which no tort action will lie."

And 1 Am.Jur.2d Actions, § 8, which states:

"If the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is, in substance, an action on the contract, whatever may be the form of pleading. If the plaintiff states a cause of action for breach of contract, additional averments appropriate to a cause of action for a wrong will not convert the cause of action into one for tort, and the part of his pleading appropriate to an action in tort will be considered surplusage. And even though an action may be in the form of tort, yet, if the subject of it is based on contract, the action will be attended by all the incidents of an action ex contractu."

3. This is a diversity suit and state law applies. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The state law on the subject is treated in Lehman v. Feld, 5 Cir., 37 F. 852; Copes v. Matthews, 10 Smedes & M. (18 Miss.) 398; Ketcham v. Miss. Outdoor Displays, 203 Miss. 52, 33 So.2d 300.

to prevent IMC from removing the case to this Court.

The next question for the Court is whether the claim or cause of action stated in the complaint against IMC is a separate and independent claim or cause of action, which would be removable if sued upon alone.

It is clear to the Court that there is no connection of any nature between the liability of J. W. Lollar, James B. Lollar and C. F. Vincent, if any, to Chipman Brothers on the leases between them and the liability of IMC, if any, on its contract to test the soil and fertilize the land covered by the leases. The lessors and lessee included in each of the leases a provision that the lessee would utilize the services of IMC to test the soil and fertilize the land covered thereby. The record shows that IMC had no connection with the leases and was not a party to any of them. The provision was inserted in each lease because of the high regard in which IMC was held by J. W. Lollar, with whom Chipman Brothers had negotiated the leases.

It is clear that the claim or cause of action against IMC is a separate one from the claims and causes of actions against J. W. Lollar, James B. Lollar and C. F. Vincent. The only question which remains is whether the claim or cause of action against IMC is independent of the other claims. In order for the suit to be removable, the claim or cause of action must not only be separate, but it must also be independent and such as would be removable if sued upon alone. 28 U.S.C. § 1441(c), supra.

Chipman Brothers argue in their brief that the controversy set forth in the complaint cannot be fully determined between the plaintiffs and each individual defendant within the framework of separate and distinct suits, citing authorities to sustain their position.

Chipman Brothers claim damages in the sum of $13,000.00 against defendant Vincent for the breach of a contract to clear land. With the exception of a demand for a cancellation of the lease, this is the only relief sought against Vincent. It is clear that a separate and distinct suit against Vincent only would fully determine the controversy between them.

The same can be said with reference to the claim of Chipman Brothers against J. W. Lollar and James B. Lollar, wherein they seek to recover compensation for work performed on the land in the sum of $13,687.50 and a recision of the leases. A suit against these defendants bottomed on the leases executed by them is capable of being fully determined in a suit wherein they are the only defendants.

The only other claim or cause of action set forth in the complaint is the one against IMC and its agent Fulgham for damages in the sum of $70,000.00, growing out of the alleged breach of the contract. This claim is capable of being fully determined in a separate and distinct suit.

The contention of Chipman Brothers that the controversies between them and the several defendants cannot be fully determined between Chipman Brothers and each individual defendant within the framework of separate and distinct suits is without merit.

This does not, however, decide the issue, for the claims may be separate and distinct and yet not separate and independent as the removal statute requires.

In presenting their argument that the claims or causes of action set forth in the complaint are not independent of each other, Chipman Brothers contend that the leases and contract were directed at the accomplishment of one goal, an economic gain to Chipman Brothers from the farm operations to be conducted by them; that the leases and contract interlocked one with the other, constituted a single transaction; and that the losses sustained on each lease and on the contract resulted in but one single injury—economic loss to them.

Chipman Brothers cite and rely primarily on the case of American Fire and Casualty Co. v. Finn, 1951, 341 U.S.

6, 71 S.Ct. 534, 95 L.Ed. 702, 19 A.L.R. 2d 738 (1951).

*American Fire* involved an action by a Texas resident against two foreign insurance companies and their Texas resident agent to recover for property lost by fire, in which action it was asserted that one or the other company, through its agent, insured the property and that the agent was responsible for anything that would result in the defeat of plaintiff's recovery. Upon the motion of the insurance companies the case was removed to a Federal Court, which rendered a judgment on the merits against one of them. The latter's motion to vacate the judgment for lack of diversity jurisdiction and to remand the case to the State court, was denied by the courts below, the Court of Appeals taking the view that the case would have been removable under § 71 of Former Title 28 U.S.C., which allowed removal of a separable controversy, and was removable under § 1441(c) of Revised Title 28, which allows such removal whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action. The Supreme Court reversed the case and remanded it to the District Court with directions to vacate the judgment entered and, if no further steps were taken by any party, to affect its jurisdiction, to remand the case to State court.

The Supreme Court determined that the causes of action against the three defendants were not independent of each other; that the loss or damage came from a single incident—the destruction of the property by fire, and that the facts alleged in both portions of the complaint, the portion in which the Texas agent was a defendant, and the portion in which the insurance companies were defendants, were approximately the same, and that the suit did not involve separate and independent claims for relief as § 1441(c) requires. The Court said in this regard:[4]

---

4. In *American Fire*, in discussing the effect of 28 U.S.C. § 1441(c), the court also said:

"A separable controversy is no longer an adequate ground for removal unless it also constitutes a separate and independent claim or cause of action."

\* \* \* \* \*

"In a suit covering multiple parties or issues based on a single claim there may be only one cause of action and yet be separable controversies."

\* \* \* \* \*

"The effectiveness of the restrictive policy of Congress against removal depends upon the meaning ascribed to 'separate and independent \* \* \* cause of action.' § 1441. Although 'controversy' and 'cause of action' are treated as synonymous by the courts in situations where the present considerations are absent, here it is obvious different concepts are involved."

\* \* \* \* \*

"In a suit turning on the meaning of 'cause of action,' this Court announced an accepted description. Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069. This Court said, 274 U.S. at page 321, 47 S.Ct. at page 602:

'Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong and was entitled to but one recovery, whether his injury ws due to one or the other of several distinct acts of alleged negligence or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex.'

\* \* \* \* \*

"Considering the previous history of 'separable controversy,' the broad meaning of 'cause of action,' and the revision resulting in 28 USC § 1441(c), we conclude that there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

In making this determination we look to the plaintiff's pleading, which controls. Pullman Co. v. Jenkins, 305 U.S. 534, 538, 59 S.Ct. 347, 83 L.Ed. 334, 338. The single wrong for which relief is sought is the failure to pay compensation for the loss on the property. Liability lay among three parties, but it was uncertain which one was responsible. Therefore, all were joined as defendants in one petition."

"The past history of removal of 'separable' controversies, the effort of Congress to create a surer test, and the intention of Congress to restrict the right of removal leads us to the conclusion that separate and independent causes of action are not stated. The facts in each portion of the complaint involve Reiss, the damage comes from a single incident. The allegations in which Reiss is a defendant involve substantially the same facts and transactions as do the allegations in the first portions of the complaint against the foreign insurance companies. It cannot be said that there are separate and independent claims for relief as § 1441(c) requires. Therefore, we conclude there was no right to removal."

The Court of Appeals for the Fifth Circuit discussed this question in Edwards v. E. I. DuPont De Nemours & Co., 5 Cir. 1950, 183 F.2d 165. *Edwards* involved an action in tort for personal injuries allegedly sustained by plaintiff from the explosion of ten sticks of dynamite while he was engaged in blowing up stumps on his farm in Georgia. While *Edwards* involved an action in tort, and the case sub judice involves causes of action sounding in contract, the fundamental rule is the same. The complaint charged negligence on the part of the merchant or local distributor of the dynamite and on the part of E. I. DuPont, a citizen of a state other than Georgia, the manufacturer thereof in their failure to follow prudent customs that were necessary in the sale and distribution of explosives. In considering whether the complaint stated a cause of action against the non-resident defendant, independent of the cause of action therein stated against the resident defendant, the Court said:

"Aided thus, we look to the federal statutes as construed by federal decisions to determine whether the case is removable in whole or in part, all questions of joinder, non-joinder, and misjoinder being for the federal court.

We are no longer interested in separable controversies as a ground of removal, but are bound to remand this case to the state court unless a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more non-removable claims or causes of action. If, as a matter of law, a valid claim is stated against the resident defendant, and none is stated against the non-resident, the cause is not removable. On the other hand, the case is removable if as a matter of law no joint cause of action is stated, or if no claim is stated, against the resident defendant, or if a separate and independent claim or cause of action is stated against the non-resident defendant."

\* \* \* \* \* \*

"In the instant case, according to the complaint, there is but a single cause of action, and that is the injury done the plaintiff by the several acts of the defendants. There was but one accident, one explosion, one catastrophe, one civil wrong or injury; in a word, one tort, resulting from one or more negligent acts; it culminated in the injuries to appellant. Leading up to the final event were a series of transactions, and doubtless several acts of negligence, that materially contributed to the tragic end, possibly some committed by others not parties hereto; but there was only one wrong, one infraction of a legal right; and it gave rise to a joint or several cause of action, which appellant has elected to make joint."

The Court must determine whether the claim or cause of action against IMC is independent of the claims asserted against J. W. Lollar, James B. Lollar and C. F. Vincent. If independent, the claim or cause of action is one that would be removable if sued upon alone, as diversity of citizenship exists between Chipman Brothers and IMC and the matter in controversy exceeds the

sum or value of $10,000.00, exclusive of interest and costs.[5]

In making this decision the Court must consider that the subject matter of the controversy is whatever Chipman Brothers in good faith declares it to be in its complaint, not by conclusions of law but by well-pleaded allegations of fact. Edwards v. E. I. DuPont De Nemours & Co., 5 Cir. 1950, 183 F.2d 165.

When the subject matter of the controversy is considered in light of the well-pleaded allegations of fact set forth in the complaint, it is clear to the Court that there are three separate and independent claims or causes of action contained in the complaint.

Chipman Brothers sue J. W. Lollar for the recovery of expenses allegedly incurred by them in cleaning and clearing land rented to them by Lollar. This claim or cause of action is bottomed on the written lease contract between the parties. The injury alleged to have been suffered by Chipman Brothers is the failure of Lollar to pay them the amount allegedly due under the contract. It is difficult to connect this claim or cause of action in any way or manner with Chipman Brothers' claim against IMC.

The Court holds that the claim or cause of action against Lollar on his contract is independent of the claim which Chipman Brothers assert against IMC.

Chipman Brothers sue C. F. Vincent for failure to comply with the terms of his lease contract with them to clear a portion of the land covered by the lease. They sue for a breach of contract and seek $13,000.00 in damages.

Should the complaint state a claim or cause of action against Vincent, which is extremely doubtful, it is clear that such claim or cause of action is an independent one from the claims asserted against the other defendants. The injury claimed by Chipman Brothers arises, if at all, because of the failure of Vincent to clear and clean the land. Without this being done there is no obligation imposed on IMC to test the soil or fertilize the land. The Court holds that the claim against Vincent is independent of all other claims asserted in the complaint.

It therefore follows that the claim or cause of action against IMC is independent of all other claims or causes of action stated in the complaint.

In sum, the Court holds that the claim or cause of action of Chipman Brothers against IMC is a separate and independent claim or cause of action, which would be removable if sued upon alone, that such claim or cause of action has been joined with one or more otherwise non-removable claims or causes of action, and that the entire case sub judice has been properly removed from the Chancery Court of Lowndes County, Mississippi to the United States District Court for the Northern District of Mississippi, Eastern Division.

An appropriate order will be entered, overruling the motion of Chipman Brothers to remand this case to the State Court.