FEDERAL COMPRESS & WAREHOUSE CO. *v.* McLEAN, SHERIFF.

(Division A.   April 3, 1933.)

[147 So. 325.   No. 30543.]

Green, Green & Jackson, of Jackson, for appellant.

740

**W. W. Pierce,** Assistant Attorney-General, for appellee.

Argued orally by **Garner Green**, for appellant, and by **W. W. Pierce**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellant is a Delaware corporation, and owns and operates a cotton warehouse and a cotton compress at Cleveland, Mississippi. Section 57, chapter 88, Laws of 1930, imposes a privilege tax "upon each person operating a cotton compress," graduated according to the number of bales compressed per annum. Section 63 of the same statute imposes a privilege tax "upon each person operating a warehouse for the storage of cotton, whether in conjunction with a compress or not," graduated according to the storage capacity of the warehouse. These privilege taxes must be paid before the warehouse and compress can be operated, sections 3 and 242 of the statute. The appellant paid the appellee tax collector, under protest, the privilege taxes required of it under these statutes, and has brought this suit to recover the same.

The case was tried on an agreed statement of facts.

The court directed the jury to return a verdict for the appellee, and there was a judgment accordingly.

The appellant's complaints are: First, the statute, as applied to it, violates the United States Warehouse Act (see 7 U. S. C. A., section 241 et seq.) ; and, second, regulates or imposes a burden on interstate commerce beyond the state's power to do under the commerce clause of the Federal Constitution.

The following facts appear from the agreed statement of facts: Cotton, after being picked, is ginned and packed into bales of approximately five hundred pounds each. The general and uniform custom under which cotton is marketed is to transport it from its place of production by rail or truck to a warehouse or compress, the owner receiving from the warehouse a negotiable receipt therefor. The cotton is then sold to buyers, who purchase it for the purpose of selling and shipping it in interstate commerce. All of the cotton, except such a few bales thereof as to be negligible, that has passed through the appellant's warehouse and compress, has been shipped therefrom to other states or countries. The appellant has a contract with the Yazoo & Mississippi Valley Railroad Company, near the right of way of which its warehouse and compress are situated, one of the provisions of which is as follows:

"The intent and purpose of this agreement, among other things, is to confirm the Compress Company as the limited agent of the railroad company for the purposes of receiving cotton from the railroad company, delivering cotton to the railroad company, loading and unloading cotton from and into the cars of said railroad company, making proper delivery of cotton in the custody of said compress company so far as concerns the interest of the railroad company, and as principal to furnish the premises for the use of the railroad company as a cotton depot under and subject to all of the terms and conditions of this agreement and the lawfully published

tariffs and regulations of the railroad company from time to time in effect with respect to the transportation and handling of cotton.''

When the purchasers of these warehouse receipts have sold, and desire to ship, the cotton to other states or countries, they surrender the receipts to the appellant which then compresses the cotton, thereby reducing the size of the bale, and loads it into cars of the railroad company, which then issues a bill of lading therefor. The rate charged by the railroad company for transporting the cotton that had been shipped to the compress from an interior point on a local bill of lading is the through rate from the point from which it was shipped to the appellant to its point of destination under the new bill of lading; credit thereon being given the shipper on the surrender of the receipt for the transportation charged under the prior local bill of lading. The appellant's charges for compressing the cotton are paid by the railroad company, which, together with the railroad's transportation charges, are with the approval of the Interstate Commerce Commission.

The appellant's complaint that the exaction of these privilege taxes, as applied to it, violates the United States Warehouse Act, may be summarily disposed of by saying that it is wholly without merit.

The appellee concedes, and for the purpose of the argument we will assume, that these taxes as applied to the appellant violate the interstate commerce clause of the Federal Constitution, if its warehouse and compress are essential means and instrumentalities of interstate commerce.

The cotton, moving through the appellant's warehouse and compress, entered into, and became a part of, interstate commerce when, but not until, it commenced its journey from this state to another state or country; in other words, when the cotton was delivered to the railroad company for transportation into another state or

country. This did not occur until it was delivered to the railroad, after being compressed, for transportation. Coe v. Errol, 116 U. S. 519, 6 S. Ct. 475, 29 L. Ed. 715; Diamond Match Co. v. Village of Ontonagon, 188 U. S. 82, 23 S. Ct. 266, 47 L. Ed. 394. The assembling of the cotton in the warehouse and its compression are acts preliminary, convenient for, but not absolutely essential, to its transportation to other states or countries. Authorities supra; and Munn v. People of Illinois, 94 U. S. 113, 24 L. Ed. 77; W. W. Cargill Company v. Minnesota, 180 U. S. 452, 21 S. Ct. 423, 45 L. Ed. 619; Merchants' Exchange of St. Louis v. Missouri, 248 U. S. 365, 39 S. Ct. 114, 63 L. Ed. 300; 12 C. J. 38, pp. 94, 103. The appellant's warehouse and compress, therefore, are not instrumentalities of interstate commerce; consequently the privilege taxes collected thereon imposed no unconstitutional burden on that commerce.

Affirmed.