FEDERAL COMPRESS & WAREHOUSE CO. et al. *v.* McLEAN, SHERIFF, et al.

No. 166. Argued December 11, 13, 1933.—Decided January 8, 1934.

*Mr. Garner W. Green,* with whom *Mr. Marcellus Green* was on the brief, for appellants.

*Mr. W. W. Pierce,* Assistant Attorney General of Mississippi, with whom *Mr. Greek L. Rice,* Attorney General, was on the brief, for appellee.

MR. JUSTICE STONE delivered the opinion of the Court.

This case comes here on appeal, under § 237 of the Judicial Code, for review of a judgment of the Supreme Court of Mississippi upholding a state excise tax assailed as a forbidden imposition upon a federal instrumentality, and as infringing the commerce clause of the Federal Constitution. 166 Miss. 739; 147 So. 325. Sections 3, 57, 220, 221, 225, 242, of c. 88, of the General Laws of Mississippi of 1930 exact an annual license tax for the privilege of operating a cotton compress, which is graduated according to the number of bales of cotton compressed per annum.

Sections 3 and 63 levy a similar additional tax upon each person operating a warehouse, whether in conjunction with a compress or not, which is graduated according to the storage capacity of the warehouse.

Appellant, a Delaware corporation which maintains and operates a cotton warehouse and compress at Cleveland, Mississippi, brought the present suit to recover taxes imposed with respect to both classes of business, paid under protest to appellee, the tax collector, in 1932. The case was tried on an agreed statement of facts, from which it appears that the appellant is licensed by the Secretary of Agriculture to conduct a warehouse for the storage of agricultural products under the provisions of the United States Warehouse Act of August 11, 1916, c. 313, 39 Stat. 486, as amended, c. 10, Tit. 7, U.S.C.A. Appellant has given a bond for the faithful performance of the duties which are exacted of a licensed warehouseman by the Act and by the rules and regulations of the Secretary of Agriculture, and its business as a warehouseman is subject to his inspection and control as the statutes and regulations provide.

Cleveland is a shipping point for baled cotton in interstate and foreign commerce and is a market in which cotton is purchased by brokers and dealers from those who produce it within the state. The purchases are made for resale or to fulfill contracts for sale of cotton without the state. In the usual course of business the purchased cotton, after it is ginned, is transported to appellant's warehouse for storage and compression, about 25% arriving by automobile truck or wagon and the remainder by rail over the line of the single railroad serving Cleveland. Upon delivery appellant issues its negotiable warehouse receipts for the cotton, in the form and manner provided by the United States Warehousing Act. The right to demand delivery of the cotton or otherwise control its

disposition is reserved to the holders of the receipts. A small part of the stored cotton, from 1% to 10%, is resold within the state to buyers who sell it to purchasers without the state, but all except a negligible part of it is ultimately shipped to points outside the state. Upon shipping orders given by the holders of the warehouse receipts, appellant compresses the cotton into bales of standard weight and size, suitable for shipment, and delivers them to the rail carrier for interstate transportation. The movement of the cotton out of the warehouse is directed by the owners of it, who hold the warehouse receipts. Its destination is not determined until the owner gives shipping instructions to appellant and shipment is not made until surrender of the warehouse receipts. The compress charges are paid by the carrier, which it adds to the charge for carriage, and in the case of cotton brought to the warehouse by rail carriage, the through interstate rail rate is applied from the point of origin to destination instead of the combination rate, which is the sum of the intrastate rate to Cleveland and the interstate rate from that point to destination. The identity of the cotton is not preserved in reshipping it and substitution is permitted with the understanding that the through rate from point of origin to destination without the state shall not be affected.

By written agreement with the railroad company, appellant is designated as the agent of the railroad to receive the cotton from and deliver it to the railroad and to load and unload cotton upon and from its cars. The agreement also provides for the use of the warehouse by the railroad as a cotton depot.

Upon this state of facts appellant argues that the tax upon the business both of warehousing and of compressing the cotton is a forbidden burden on interstate commerce, and that the warehouse tax is unconstitutional

because a direct tax upon a business conducted by appellant as a federal instrumentality, designated as such by its license under the United States Warehousing Act.

1. It is clear that by all accepted tests the cotton, while in appellant's warehouse, has not begun to move in interstate commerce and hence is not a subject of interstate commerce immune from local taxation. When it comes to rest there, its intrastate journey, whether by truck or by rail, comes to an end, and although in the ordinary course of business the cotton would ultimately reach points outside the state, its journey interstate does not begin and so it does not become exempt from local tax until its shipment to points of destination outside the state. Before shipping orders are given, it has no ascertainable destination without the state, and in the meantime, until surrender of the warehouse receipts, it is subject to the exclusive control of the owner. Property thus withdrawn from transportation, whether intrastate or interstate, until restored to a transportation movement interstate, has often been held to be subject to local taxation. *Coe* v. *Errol*, 116 U.S. 517; *Bacon* v. *Illinois*, 227 U.S. 504; *General Oil Co.* v. *Crain*, 209 U.S. 211; *Susquehanna Coal Co.* v. *South Amboy*, 228 U.S. 665, 669; *Minnesota* v. *Blasius*, 290 U.S. 1; cf. *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.*, 249 U.S. 134.

A non-discriminatory tax upon the business of storing and compressing the cotton, which is not itself the subject of a movement in interstate commerce, is not forbidden. Most articles, before their shipment in interstate commerce, have had work done upon them which adapts them to the needs of commerce and prepares them for safe and convenient transportation, but that fact has never been thought to immunize from local taxation either the articles themselves or those who have manufactured or otherwise prepared them for interstate transportation. *American*

*Manufacturing Co.* v. *St. Louis,* 250 U.S. 459; *Crescent Cotton Oil Co.* v. *Mississippi,* 257 U.S. 129; *Oliver Iron Mining Co.* v. *Lord,* 262 U.S. 172; *Hope Natural Gas Co.* v. *Hall,* 274 U.S. 284; *Utah Power & Light Co.* v. *Pfost,* 286 U.S. 165. Here the privilege taxed is exercised before interstate commerce begins, hence the burden of the tax upon the commerce is too indirect and remote to transgress constitutional limitations. See *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U.S. 249. The case, therefore, stands on a footing different from those in which local regulations of the business of purchasing a commodity within and shipping it without the state have been deemed to impede or embarrass interstate commerce in those commodities. *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U.S. 282; *Lemke* v. *Farmers Grain Co.,* 258 U.S. 50.

The fact that appellant's contract with the interstate rail carrier has designated appellant as the carrier's agent and appellant's warehouse as the carrier's depot cannot alter the legal consequences of what is actually done with the cotton by its owners or of their power of control over it, or of the actual course of dealing with it by appellant. It is not within the power of the parties, by the descriptive terms of their contract, to convert a local business into an interstate commerce business protected by the interstate commerce clause. See *Merchants Warehouse Co.* v. *United States,* 283 U.S. 501, 507–508; *Superior Oil Co.* v. *Mississippi,* 280 U.S. 390; *Browning* v. *Waycross,* 233 U.S. 16, 23.

2. Appellant's license under the United States Warehousing Act did not confer upon it immunity from state taxation, for neither the appellant nor its business was, by force of the license, converted into an agency or instrumentality of the federal government. The Warehousing Act confers upon licensees certain privileges and

secures to the national government, by means of the licensing provisions, a measure of control over those engaged in the business of storing agricultural products who find it advantageous to apply for the license. The government exercises that control in the furtherance of a governmental purpose to secure fair and uniform business practices. But the appellant, in the enjoyment of the privilege, is engaged in its own behalf, not the government's, in the conduct of a private business for profit. It can no longer be thought that the enjoyment of a privilege conferred by either the national or a state government upon the individual, even though to promote some governmental policy, relieves him from the taxation by the other of his property or business used or carried on in the enjoyment of the privilege or of the profits derived from it. *Susquehanna Power Co.* v. *Tax Commission*, 283 U.S. 291; *Fox Film Corp.* v. *Doyal*, 286 U.S. 123; *Broad River Power Co.* v. *Query*, 288 U.S. 178, 180.

The fact that the license is used also as a means of government control of appellant's business does not call for a different conclusion. The national government has not assumed to tax the business or to exercise any control over the taxation of it by the state. The state does not tax the license itself and the tax upon petitioner's business, applied without discrimination to all similar businesses whether licensed or not, does not impair the control which the federal authority has chosen to exert. The mere extension of control over a business by the national government does not withdraw it from a local tax which presents no obstacle to the execution of the national policy. Compare *Susquehanna Power Co.* v. *Tax Commission, supra; Broad River Power Co.* v. *Query, supra.* See *Willcuts* v. *Bunn*, 282 U.S. 216, 226, 230.

*Affirmed.*