154 So. 602

## TURNER TERMINAL CO. v. STATE.

I Div. 134.

Court of Appeals of Alabama.
March 27, 1934.

Rehearing Denied April 17, 1934.

Inge, Stallworth & Inge, of Mobile, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for the State.

RICE, Judge.

"The Turner Terminal Company, operating dock facilities in the City of Mobile, owns as a part of its docks equipment, several shipside warehouses and a shipside cotton compress. During the license year Oct. 1, 1931–Sept. 30, 1932, it received cotton (compressing it when requested to do so), and held it for account of the owner or shipper awaiting his shipping instructions, shipped from interior points in Alabama and Mississippi, mostly consigned to the owner in care Turner Terminal Company, but some on through waybills, all destined (eventually) for shipment by boat to other states or other countries. During the license year in question every bale coming to the appellant and leaving its warehouses was actually shipped by boat out of the port of Mobile to other countries or other states. None of the cotton belonged to the appellant, which furnished for compensation its shipside facilities.

"The cotton of the various owners remained in the warehouses varying lengths of time; some went direct to ships on arrival at the Terminal Company. So much of the cotton as reached the Terminal Company, but had not already been compressed, had to remain for compression before shipment."

All that has been set down above is taken, literally we believe, cutting out only some repetitions, from the brief filed here by its distinguished counsel, on behalf of appellant.

We should observe, and it should be kept in mind, that, while the statement is made, and adopted by us, that all the cotton, etc., was "destined" for shipment by boat to other states or other countries, yet as a matter of fact this is but a conclusion, in the premises, since it is without dispute that the cotton, etc., was "kept by the Terminal Company for the owner as long as the owner wished it kept," and that "none of the cotton going to appellant's compress is on a through waybill because cotton (this cotton, we interpolate) is not handled in that fashion," and that "when cotton is received at the Terminal Company warehouses, it comes consigned to the man who owns it, in care of the Turner Terminal Company, and is held for account of the owner, * * * *and he (the owner) issues orders as to what to do with it.* [Italics ours.] He may order it out at once, and, if he cannot use it in filling immediate orders, he lets it stay there until he can use it." Or, we might add, clearly, he might sell it to whomsoever he chose.

This appeal is from a judgment in favor of the state in a suit by it to collect from appellant the license required by Schedule 48 of the 1929 Revenue Compilation, being Schedule 36, Gen. Acts 1919, pp. 282, 395, section 361, cotton compress, etc., and also the license required by Schedule 182 of the 1929 Revenue Compilation, which is Schedule 114, Gen. Acts 1919, pp. 282, 436, § 361, warehouse, cotton, etc.

Resistance to the payment of the licenses mentioned was based on the sole ground "that all cotton which was stored in appellant's warehouse or compressed in its cotton compress during the time involved was cotton which was in process or progress of interstate or foreign commerce, and that the businesses of operating a warehouse and compress (as operated by it during the time involved) were both instrumentalities of foreign or interstate commerce and hence not subject to be licensed by the State of Alabama."

The parties to the suit, with a commendable spirit of co-operation, have agreed upon all matters of procedure, etc. They agree, in effect, that, if appellant's warehouse, etc., and compress, etc., were, during the time involved, under the facts as we have stated them hereinabove, "instrumentalities of for-

eign or interstate commerce" solely, the judgment is due to be reversed. If they were not, the judgment should be affirmed.

We have endeavored to, and we think we have, stated every essential fact involved. Upon those facts and the agreement, etc., of the counsel in the cause, it is our opinion, and we hold, that the judgment should be affirmed. For our authority we need go no further than the case of Federal Compress & Warehouse Co. et al. v. McLean, Sheriff, etc., et al., 54 S. Ct. 267, 268, 78 L. Ed. 622, a case decided by the Supreme Court of the United States on January 8, 1934.

Here, as in the case cited, "it is clear that by all accepted tests the cotton, while in appellant's warehouse, has not begun to move in interstate commerce, and hence is not a subject of interstate commerce immune from local taxation. When it comes to rest there, its intrastate journey, whether by truck or by rail, comes to an end, and, although in the ordinary course of business the cotton would ultimately reach points outside the state, its journey interstate does not begin, and so it does not become exempt from local tax until its shipment to points of destination outside the state. Before shipping orders are given, it has no ascertainable destination without the state, and in the meantime, until surrender of the warehouse receipts, it is subject to the exclusive control of the owner. Property thus withdrawn from transportation, whether intrastate or interstate, until restored to a transportation movement interstate, has often been held to be subject to local taxation. * * * A nondiscriminatory tax upon the business of storing and compressing the cotton, which is not itself the subject of a movement in interstate commerce, is not forbidden. Most articles, before their shipment in interstate commerce, have had work done upon them which adapts them to the needs of commerce and prepares them for safe and convenient transportation, but that fact has never been thought to immunize from local taxation either the articles themselves or those who have manufactured or otherwise prepared them for interstate transportation. * * * Here the privilege taxed is exercised before interstate commerce begins; hence the burden of the tax upon the commerce is too indirect and remote to transgress constitutional limitations."

The judgment is affirmed.

Affirmed.