## CARPENTER v. WAXAHACHIE COTTON WAREHOUSE et al.

### No. 2415.

Court of Civil Appeals of Texas. Waco.

April 30, 1942.

Rehearing Denied May 28, 1942.

Curtis E. Hill, of Dallas, and Lem Wray, of Waxahachie, for appellant.

J. J. Eckford and Paul T. McMahon, both of Dallas, for appellees.

HALE, Justice.

Jess Carpenter sued Mrs. N. A. McMillan, doing business as Waxahachie Cotton Warehouse, for minimum wages, overtime compensation, liquidated damages and a reasonable attorney's fee alleged to be recoverable under the provisions of the federal statutes known as the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S. C.A. § 201 et seq. The case was tried before the court below without a jury. The court filed extensive findings of fact and conclusions of law, the substance of which was that the parties were not engaged in interstate or foreign commerce, or in the production of goods for such commerce, at any time material to the suit, and if the plaintiff was employed in such commerce, then he was so employed within the area of production, engaged in storing in their raw state of agricultural commodities for market, with the result that the Act of Congress under which the suit was prosecuted did not apply to the facts of this case. Judgment was accordingly rendered in favor of defendant and plaintiff has appealed.

Under appropriate points in his brief appellant contends that he and appellee were engaged in the production of goods for com-

merce and in a process or occupation necessary thereto within the meaning of the federal statutes, and that the business in which he was engaged while in the employ of appellee did not come within the ambit of the exemption provided by Section 213 (a) (10) of said Act. He insists that this court should reverse the judgment of the trial court and here render judgment for him.

The Fair Labor Standards Act of 1938 declares the policy of the federal government with respect to labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers in industries engaged in commerce, or in the production of goods for commerce. It defines various terms employed in the Act, creates a Wage and Hour Division in the Department of Labor under the direction of an Administrator thereof, provides minimum wages and maximum hours for such workers with certain exemptions, and imposes penalties by way of civil and criminal liability for its violation, the action to recover such civil liability being maintainable in any court of competent jurisdiction by any affected employee or his designated agent. In an exhaustive opinion by the Supreme Court of the United States, the constitutionality of this Act has been generally upheld as coming within the delegated powers of the Congress to regulate interstate and foreign commerce. United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. Therefore, if appellant has established the essential facts necessary to bring his asserted cause of action within the constitutional provisions of the Act, then he was entitled, under the other findings in this case, to recover the sum of $2,688.60 as minimum wages, overtime compensation and liquidated damages, plus a reasonable attorney's fee, which the trial court found to be the sum of $400.

■■ It is elemental that the duty rests upon the trial court in the first instance to find the material facts in every case. When any fact issue has been thus resolved, whether by a jury or by the court below, such finding will not be disturbed on appeal unless the same is contrary to the undisputed evidence, is without any support in the evidence, or is so manifestly against the overwhelming weight and preponderance of the testimony as to be clearly wrong. Day

v. Grayson County State Bank, Tex.Civ. App., 153 S.W.2d 599.

The evidence in this case showed, and the trial court found, that appellee owned and operated a warehouse located within the corporate limits of Waxahachie, Texas, a town having a population of approximately 9,000 inhabitants. Appellant was employed by appellee from October 24, 1938, to and including February 3, 1940, as night watchman, and for this service he was paid the agreed sum of $1 per night, amounting in the aggregate to $467. He was required in the discharge of the duties of his employment to be on duty, and he was on duty with the exception of four or five nights, twelve hours each night, in order to watch said warehouse and its contents, consisting of baled lint cotton, and protect the same from fire, theft and other depredations. During the period of appellant's employment approximately 5600 bales were stored in said warehouse, for which a charge was collected by appellee from the various owners of such cotton. All of the cotton so stored was produced upon farms in the general vicinity or trade territory of Waxahachie and not more than 500 bales came from beyond a ten mile radius of said town. Appellee was not engaged in any other business than that of safely keeping the baled cotton in its raw state. She did not have more than four persons in her employ at any time. She did not buy, sell, own or ship any cotton, but merely stored the same for others and released it on the order of the owner when he desired to remove it from her warehouse.

■■ It would serve no useful purpose for us to dwell at length upon the fine distinctions as to when a given workman is or is not engaged in interstate commerce, as we have reached the conclusion that the evidence in this case justified the material findings of the trial court by any of the tests recognized in the law. Appellant was not engaged at any time in the manufacture, production, or processing of anything. He did not handle or assist in the handling or transportation of any of the cotton which he was employed to watch. There was no showing that he, appellee, or any other person knew what disposition was finally to be made of said cotton, or as to when, if ever, any part thereof would actually flow into the stream of interstate commerce. It was shown that 2607 bales in storage were

under the control of the Commodity Credit Corporation and the same were shipped in the month of December, 1939, by that concern directly from Waxahachie to the Cotton Concentration Company at Galveston, Texas, where they still remained at the time of the trial in January, 1941. Even though the courts should take judicial notice, as urged by appellant, that in all reasonable probability a substantial amount of said cotton will ultimately find its way into the channels of interstate or foreign commerce after prolonged delays and interruptions in transit, yet this court cannot say as a matter of law, under the evidence in the record, that either of the parties before us was engaged at any time material to this suit in such commerce, or in the production of goods therefor, or in a process or occupation necessary thereto. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17, 54 S.Ct. 267, 78 L.Ed. 622; Champlain Realty Co. v. City of Brattleboro, 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309, 25 A.L.R. 1195.

Where a cause of action and the remedy for its enforcement are derived, as in this case, not from the common law but from statute, it is generally held that the statutory provisions giving rise thereto are mandatory and exclusive and must be complied with in all respects or the action is not maintainable. Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084, points 1 and 2, and authorities there cited. Since appellant has failed to establish the fact that he was engaged in interstate or foreign commerce, or in the production of goods for such commerce, at any time during his employment, it follows, in our opinion, that he has not brought his asserted cause of action within the broad sweep of the Fair Labor Standards Act of 1938, and consequently he was not entitled to recover the rigorous penalties here sought under said Act. Washington Fidelity Nat. Ins. Co. v. Williams, Tex.Com.App., 49 S.W.2d 1093, point 3, and cases there cited.

■ Moreover, Section 213 (a) (10) of said Act expressly provides that the wages and hours therein specified shall not apply with respect to any individual employed within the area of production (as defined by the Administrator), engaged in handling or storing in their raw or natural state of agricultural or horticultural commodities for market. The evidence shows that the Administrator has issued certain bulletins from time to time interpretative of the Act. In the bulletin which was effective on October 24, 1938, it was provided, in defining an individual employed within the area of production as used in the Act, that such individual shall be regarded as so employed if the commodities "are obtained by the establishment where he is employed from farms in the immediate locality, and the number of employees in such establishment does not exceed seven." In a later bulletin issued on June 15, 1939, it was provided that an individual shall be regarded as employed within the area of production in the handling or storing of such commodities for market "if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed seven, or if he performs those operations on materials all of which come from farms in the immediate locality of the establishment where he is employed and the establishment is located in the open country or in a rural community." It was further provided that "immediate locality" shall not include any distance of more than ten miles, and "open country" or "rural community" shall not include any city or town of more than 2500 population. In the interpretation of this bulletin the Administrator stated that the term "general vicinity" is broader than the term "immediate locality" and that the broader term should be liberally interpreted; that the expression "area of production" and the legislative history behind it "indicate that it was intended to provide an exemption for (1) the operation taking place close to the farm where the agricultural or horticultural commodities are produced, and (2) the small operation involving the employment of merely a few persons whether or not it takes place quite as close to the farm. Two alternative definitions of 'area of production' have, therefore, been adopted." In our opinion, the evidence thus adduced was amply sufficient to sustain the trial court's express findings to the effect that appellant was employed within the area of production of the raw cotton which was stored for market in appellee's warehouse, with the result that such employment came strictly within the limits of the exemption embodied in the Act.

We have carefully considered all of the points raised in appellant's able brief, but because we have concluded that no reversible error is thereby shown, they are all overruled and the judgment of the trial court is affirmed.