CONE MILLS CORPORATION, Plaintiff,

v.

Wayne HURDLE et al., Defendants.

ALLENBERG COTTON CO., INC., Plaintiff,

v.

R. W. COLEMAN et al., Defendants.

Nos. WC 73-91-S, EC 73-89-S.

United States District Court, N. D. Mississippi.

Jan. 10, 1974.

---

L. Glen Fant, Jr., Fant, Crutcher, Moore & Spencer, Holly Springs, Miss., Calvin L. Wells and Jack W. Brand, Wells, Gerald, Brand, Watters & Cox, Jackson, Miss., Dudley B. Bridgforth, Walker, Franks, Rone & Bridgforth, Hernando, Miss., for Cone Mills Corp.

John B. Farese, Peggy A. Jones, Farese, Farese, Jones & Farese, Ashland, Miss., Fred B. Smith, Robert W. Elliot, Ripley, Miss., for Wayne Hurdle.

Pat D. Holcomb, Grady F. Tollison, Holcomb, Dunbar, Connell, Merkel & Tollison, Clarksdale, Miss., James F. Blumstein, Nashville, Tenn., for the

American Cotton Shippers Assn., amicus curiae.

Bennett L. Kight, Michael H. Pope, Sutherland, Asbill & Brennan, Atlanta, Ga., for the American Textile Manufacturers Institute, Inc., amicus curiae.

F. M. Bush, Jr., F. M. Bush, III, Mitchell, McNutt & Bush, Tupelo, Miss., for Allenberg Cotton Co.

William W. Goodman, John McQuiston, Goodman, Glazer, Strauch & Schneider, Memphis, Tenn., for Allenberg Cotton Co. and Cone Mills Corp.

Walter M. O'Barr, Kenneth Coleman, O'Barr, Coleman & Burns, Okolona, Miss., John D. Sibley, Okolona, Miss., C. Michael Malski, Fagan, Amory, Miss., for R. W. Coleman and others.

## MEMORANDUM OF OPINION

ORMA R. SMITH, District Judge.

### A. PRELIMINARY STATEMENT

Each of the above actions is before the court upon a motion to dismiss. Relevant facts have been presented by way of affidavits and admissions. The motions have been briefed and argued extensively. The court has also received amicus curiae briefs from two trade associations with a meaningful interest in the resolution of the primary issue before the court.[1] The trade associations furnishing briefs are The American Textile Manufacturers Institute, a trade association for the cotton, man-made fibers, silk, and wool segments of the United States textile industry, and The American Cotton Shippers Association, a trade association of cotton merchants, shippers, and exporters.

The court's jurisdiction is invoked under 28 U.S.C.A. § 1332. Violations of the Commodity Exchange Act[2] and the Sherman Anti-trust Act[3] have also been alleged. At this stage, however, the fundamental question in each action involves the enforceability vel non of contracts for the advance or forward sale of cotton fiber grown for the 1973 crop year. Although these actions do not arise in identical factual settings, they share remarkable similarities and involve the same primary issue of law. The court, therefore, has decided to consider and discuss both in a single opinion.

During 1973 the price of raw cotton fiber on world markets rose in a sudden and spectacular fashion. Weather conditions, unprecedented foreign and domestic demand, dollar devaluation, and related factors combined to cause the market price to more than double within a six month period. When money speaks enticingly, listeners often become litigants.

■ The court will take judicial notice of its own docket and observe that literally scores of suits have been filed to either enforce or rescind advance or forward contracts for the sale and delivery of cotton fiber. In the present actions, buyer-plaintiffs are seeking to enforce cotton contracts on the terms and conditions allegedly agreed upon. The seller-defendants have moved to dismiss on several grounds. As noted, their primary contention is that a foreign corporation doing business in Mississippi without having qualified to do so prior to execution of the contracts is barred by Mississippi law from access to any court in Mississippi, state or federal, to enforce the contracts.

### B. THE CONTRACTUAL BACKGROUND

Cotton growers have traditionally sold their annual harvest on the open market some time after planting. Government price supports have, in some measure, enabled growers to reduce the risk of a buyer's market during seasons of abun-

---

1. There are several grounds upon which each motion is based, but the primary ground, common to both actions, is that the corporate plaintiff is barred from access to this court to enforce the contracts because, as a foreign corporation, it engaged in doing business in Mississippi without having qualified to do so as required by Mississippi law.

2. 7 U.S.C.A. § 6(c).

3. 15 U.S.C.A. § 1.

dant harvest or lagging demand.[4] The government's purpose has been to encourage continued, steady production by insuring an adequate profit for the grower. Since an artificial market tends to promote surplus production, the government may also pay to insure that crops are planted only on a limited number of acres.

Increasing sophistication in growing, milling, and marketing techniques has fostered the utilization of the "forward" contract; a relatively new feature which is now gaining acceptance throughout the cotton industry. By forward contracting, a grower agrees to sell his future crop before it is planted or soon thereafter. A capable farmer can virtually assure himself a profit even before planting. If he is unable to negotiate a price which he anticipates will be profitable, he may plant other crops which are in demand or simply allow his land to lie fallow. Thus, in theory at least, forward contracting will help restore traditional principles of supply and demand to the cotton market with the added feature that the element of risk is reduced.

The grower, moreover, can borrow on forward contracts and textile mills can price their finished product long before manufacture. Forward contracting also enables the retail merchant to determine the price of an article manufactured from cotton months in advance. However, these qualities are discussed merely to provide background. It is not necessary to consider the social aspects of forward contracting in order to reach a decision.

## C. THE FACTUAL BACKGROUND

(1) Cone Mills Corporation (Cone), the plaintiff in WC 73–91–S, is a corporate citizen of North Carolina with its principal place of business in that state. Cone manufactures textiles and operates mills in several states for that purpose. None, however, are or were during the pertinent period situated in Mississippi. The defendants, both individuals and partnerships, are citizens of Benton or Marshall Counties, Mississippi. They are cotton growers or producers.

Cone utilizes or blends various grades and varieties of cotton to manufacture textiles, and apparently buys cotton direct from many areas. The cotton grown in Benton and Marshall Counties is strict low middling or better 1¹⁄₁₆ inch staple; a variety primarily used by Cone to manufacture corduroy fabric.

Through a local agent, Cone executed the subject contracts in Mississippi at a time when it had not qualified to do business in Mississippi. Qualification was subsequently perfected on September 27, 1973, seventeen days after Cone received notification from the defendants, all of whom acted upon the advice of the same attorney, that they would not honor the contracts nor deliver the cotton.

Each contract provided that the cotton was to be delivered to the buyer at a Mississippi gin or compress. On each of the contracts Cone's place of business was penciled in as "Slayden, Mississippi". Slayden, however, was the residence of Cone's agent. Although several of the defendants had sold their 1972 crop to Cone's agent, each denied having knowledge that Cone was the actual purchaser. Apart from the contracts, evidence adduced on behalf of the plaintiff demonstrates that Cone at all times contemplated loading the cotton on board trucks after ginning for shipment to its mills outside Mississippi.

(2) Allenberg Cotton Co., Inc. (Allenberg), the plaintiff in EC 73–89–S, is a corporate citizen of Tennessee with its principal place of business in that state. Allenberg is primarily a merchant or "middle-man" company engaged in the business of buying and selling cotton in numerous states, including Mississippi. Allenberg also merchandises cotton in foreign countries. The defendants are citizens of and cotton growers in Chickasaw and Lee Counties, Mississippi.

4. 7 U.S.C.A. § 1421 et seq.

The subject contracts were initially executed in Mississippi by the defendants and Allenberg's agent, also a corporate citizen of Tennessee. Subsequently, they were transmitted to Memphis and signed by an officer of Allenberg. The defendants were aware they were selling their crop to Allenberg. The contracts called for the cotton to be ginned and baled locally and delivered on board Allenberg's trucks at the gin.

At the time of execution, Allenberg had not qualified to do business in Mississippi. On May 29, 1973, Allenberg qualified. About September 25, Allenberg was notified that defendants would not honor the contracts nor deliver the cotton.

## D. DETERMINING THE APPLICABLE LAW

Miss.Code Ann. § 79–3–211 (1972) provides in pertinent part:

> No foreign business corporation for profit shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the secretary of state. . . .
>
> Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:
>
> . . . . . .
>
> (e) Transacting any business in interstate commerce.

Miss.Code Ann. § 79–3–247 (1972) provides in pertinent part:

> No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state. . . .

The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state.

Miss.Code Ann. § 79–3–289 (1972) provides in pertinent part:

> The provisions of this chapter shall apply to commerce with foreign nations and among the several states only in so far as the same may be permitted under the provisions of the Constitution of the United States.

The penalty or sanction statute, § 79–3–247, is designed to enable Mississippi citizens to seek necessary judicial redress locally by encouraging "foreign" corporations transacting business in Mississippi to make themselves amenable to process in this state.[5] On its face, the penalty statute appears to apply a broad and independent prohibition. However, the Mississippi Supreme Court regularly construes the penalty provision in conjunction with § 79–3–211, *supra*. E. g., Ross Construction Co. v. U. M. & M. Credit Corp., 214 So.2d 822 (Miss. 1968). This court, therefore, concludes that the legislative exceptions, embodied in § 79–3–211, to the qualification or licensing requirement are applicable to the penalty statute as a matter of Mississippi law.

In Parker v. Lin-Co., 197 So.2d 228, 230 (Miss.1967) the Mississippi Supreme Court held:

> It is the opinion of this Court that the Legislature prohibited a foreign business corporation from doing business in this state without first qualifying as required by the act, and in the event such corporation violated this prohibition, it could not use the courts of this state to enforce any right of action that accrued prior to the time it qualified to do business in this state. To allow a corporation

5. Compare the provisions of the state's long arm statute, Miss.Code Ann. § 13–3–57 (1972).

that has violated the express terms of the statute to avoid the effect of the statute by qualifying only in the event it found it necessary to enforce a cause of action, would defeat the purpose of the Legislature. We hold that a foreign corporation doing business in Mississippi without having qualified as required by statute cannot use the courts of this state to enforce any cause of action that accrued as a result of doing such business.

■■ Consequently, this court recognizes the prevailing rule of law in Mississippi to be that a foreign corporation which is doing business in Mississippi is precluded from resorting to the courts of this state to enforce an alleged right unless it had qualified to do business in Mississippi at the time of the transaction out of which such right arose, or unless the transaction falls within an exempted category; i. e., if the right it seeks to enforce is exempted or protected as a transaction in interstate commerce under the Commerce Clause of the Constitution of the United States.[6] The prohibition to prosecute an action in the state courts has been extended to federal courts sitting within the state. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

■ Although this issue has not been discussed in any opinion, we conclude that the Mississippi Supreme Court would hold that the state legislature intended to adopt the federal constitutional standard when it enacted the interstate commerce exception to the qualification requirement. Therefore, a Mississippi court, when determining what activities constitute interstate commerce within the contemplation of the exempting statute, would consider itself bound by the express language of § 79-3-289 of the Mississippi Code to apply the federal standard, if indeed there is any difference between state and federal standards. Otherwise, the statutory language "only in so far as the same may be permitted under the provisions of the Con-

stitution of the United States" would be meaningless.

■ It would be unrealistic to conclude the interstate commerce exception was enacted as a voluntary exercise of legislative grace. It is a recognition of a constraint imposed upon state power by the Commerce Clause. This court, moreover, is obligated to adopt a construction of the Mississippi statute which will not force state law into a potential conflict with the federal constitution, unless an opposite construction is plainly required by clear state court precedent.

In determining whether the plaintiffs can maintain their actions in this court, we must, therefore, apply a state law which incorporates a federal constitutional standard. If the subject transactions constituted doing business in interstate commerce as that criterion is judged by the federal standard, then the plaintiffs are not barred from access to this court as a matter of Mississippi law although they had failed to qualify to do business at the time of the transactions.

■■ Despite the fact that the state court must apply a federal standard, this court—as a federal forum—is not necessarily bound, even when sitting in a diversity case, by a prior determination of the highest state court on a matter arising under the Commerce Clause. Kansas City Structural Steel Co. v. Arkansas, 269 U.S. 148, 46 S.Ct. 59, 70 L.Ed. 204 (1925). Naturally this court would rely heavily upon a determination by the Mississippi Supreme Court, particularly where a federal standard is applied to construe state law. Nonetheless, this court perceives a duty to make an independent adjudication of a right asserted by virtue of federal law unless an in-point decision by the state court has been given express, or clearly implied, approval by an appropriate federal tribunal. See, Holmberg v. Armbrecht, 327 U.S. 392, 66 S. Ct. 582, 90 L.Ed. 743 (1946).

6. U.S.Const. Art. I, § 8, Clause 3.

In summary, sitting in diversity as a Mississippi Court we have determined that the state intended to and did incorporate a federal standard into state law. Thereafter, we must sit as a federal court to apply the standard.

## E. DISCUSSION OF THE LAW

None of the defendants seriously contend the cotton was not ultimately destined for shipment and use in interstate commerce. They urge that these particular transactions were wholly intrastate because the contracts were completed and the defendants' interest terminated before the cotton had any ascertainable destination outside Mississippi and the plaintiffs might have used or disposed of the cotton entirely within Mississippi. Defendants contend that the alleged intent of the plaintiffs to transport the cotton in interstate commerce was not fixed from the outset, and that these transactions were completed before there was or could have been interstate use or shipment. In support of their position, defendants rely heavily upon Pittman v. Allenberg Cotton Co., 276 So.2d 678 (Miss.1973), a case which presented facts and issues similar to those now before the court. Allenberg, a plaintiff here, was the appellee.

Pittman, a cotton grower in Quitman County, Mississippi, contracted to sell his 1971 crop to Allenberg. The contract resembled those involved in this litigation. After execution of the contract, the price of cotton fiber rose and Pittman failed or refused to perform. Allenberg brought suit in the Chancery Court of Quitman County for specific performance and damages. Pittman pleaded that Allenberg was doing business in Mississippi without having obtained a certificate of authority and was thus barred from resorting to a Mississippi court to enforce the contract. The chancellor determined that Allenberg was not doing business in Mississippi within the meaning of the statute and awarded damages in excess of $18,000 for breach of contract. On appeal, the Mississippi Supreme Court reversed and entered judgment for Pittman.

The basis of the decision was grounded upon the court's determination that Allenberg was in fact doing business in Mississippi within the meaning of the statute and, consequently, the transaction was not one in interstate commerce. The court reasoned that all Mississippi dealings were completed before the cotton had a known destination out-of-state. Allenberg presumably did not or could not prove its Mississippi activities were a direct component of a particular interstate transaction. Cf., Union Cotton Oil Co. v. Patterson, 116 Miss. 802, 77 So. 795 (1918). In *Pittman*, the court held 276 So.2d at 681:

It is apparent that these transactions of Allenberg in each case, including that with Pittman, took place wholly in Mississippi. The contract was negotiated in Mississippi, executed in Mississippi, the cotton was produced in Mississippi, delivered to Allenberg at the warehouse in Mississippi, and payment was made to the producer in Mississippi. All interest of the producer in the cotton terminated finally upon delivery to Allenberg at the warehouse in Marks. The fact that afterward Allenberg might or might not sell the cotton in interstate commerce is irrelevant to the issue here, as the Mississippi transaction had been completed and the cotton then belonged exclusively to Allenberg, to be disposed of as it saw fit, at its sole election and discretion. . . .

Nor is the transaction converted into interstate commerce because, after the cotton had been delivered to Allenberg at the warehouse in Marks and title thereto had become vested in Allenberg in Mississippi, Allenberg, at its own election and for its own purposes, might afterward sell it in interstate commerce.

The court, however, failed to state whether it was applying federal or state standards in construing interstate commerce, or whether, in its opinion, there

is a difference. It is clear that the court did not assign great weight to the contention that the whole purpose of buying Mississippi cotton is to ship and use it in interstate commerce. In another context, this may have been a matter of judicial notice years earlier. "It is a matter of common knowledge in the cotton trade, of which the courts will take judicial notice, that cotton in a compress is on its way to market and ultimately to the textile mills, and that the market and the mills are often in other states or foreign countries." Gidden v. Gidden, 176 Miss. 98, 167 So. 785, 790 (1936).

In *Pittman*, the court apparently chose to apply a relatively narrow or, for lack of a better term, restrictive view of interstate commerce. It did not apply an "aggregate effects" test,[7] or any other less rigid concept. An important element was the fact that the cotton was to be warehoused before shipment. *Pittman* is now pending an appeal before the United States Supreme Court and Allenberg has been afforded an opportunity to secure for the court's consideration of the jurisdictional statement a certificate from the Mississippi Supreme Court as to whether its judgment was intended to rest on an adequate and independent state ground or on federal grounds. Allenberg Cotton Co., Inc. v. Pittman, 414 U.S. 1109, 94 S.Ct. 838, 38 L.Ed.2d 736 (1973).

Defendants also rely on Lilly & Co. v. Sav-on-Drugs, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961); Federal Compress v. McLean, 291 U.S. 17, 54 S. Ct. 267, 78 L.Ed. 622 (1934); and Chassanoil v. Greenwood, 291 U.S. 584, 54 S. Ct. 541, 78 L.Ed. 1004 (1934). Both *Chassanoil* and *McLean* "involved taxes imposed by Mississippi on a cotton warehouse and compress business located within that State. The taxes were nondiscriminatory and were levied both on the warehoused cotton itself and on certain processes necessary to ready it for subsequent resale. The taxes were challenged as unlawful burdens on interstate commerce, since most of the taxed cotton was ultimately to be shipped to out-of-state buyers. The Court upheld the constitutionality of the Mississippi taxes. It is not entirely clear from the Court's opinions whether their rationale was that the taxes were imposed before interstate commerce had begun, or that the burden upon commerce was at the most indirect and remote." Pike v. Bruce Church, Inc., 397 U.S. 137, 141, 90 S.Ct. 844, 846, 25 L.Ed.2d 174 (1970). In addition, both of "those cases involved cotton that had come to rest in Mississippi and '[b]efore shipping orders [were] given, it [had] no ascertainable distination without the state.'" 397 U.S. at 141, 90 S.Ct. at 847. The holding in Lilly & Co. v. Sav-on-Drugs, *supra*, was based on the fact that Lilly was conducting intrastate as well as interstate business. The suit arose out of Lilly's intrastate activities, and by such activities Lilly subjected itself to the requirements and sanctions of New Jersey's licensing laws.

The plaintiffs rely upon a series of cases involving the interstate shipment and use of wheat. In Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921) the plaintiff operated a feed and flour mill in Tennessee. Bondurant, the defendant, was a Kentucky farmer. Dahnke-Walker contracted to purchase from Bondurant a crop of wheat estimated at 14,000 bushels. The contract was executed in Kentucky and the wheat was to be paid for there. The wheat was to be loaded by Bondurant on board the cars of a common carrier in Kentucky. Dahnke-Walker intended to ship the wheat to its mill in Tennessee. Dahnke-Walker had followed a practice of buying Kentucky wheat for its mill and, on previous occasions, had purchased wheat from Bondurant for this purpose. After partial delivery, the price of wheat advanced and Bondurant refused further performance.

---

7. Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

Dahnke-Walker sued in a Kentucky court, and Bondurant defended on the ground that the plaintiff had not complied with a Kentucky statute prescribing the conditions on which foreign corporations might do business in that state. For this reason Bondurant contended the contract was not enforceable.

The suit resulted in a judgment for Dahnke-Walker at the trial court. But the Court of Appeals, while conceding the invalidity of the statute as applied to transactions in interstate commerce, held the transaction in question was not in such commerce, declared the statute valid and properly enforceable as to that transaction, and reversed judgment with directions for a new trial. The Court of Appeals proceeded on the theory that, as the contract was made in Kentucky, related to property then in that state, and was to be wholly performed in Kentucky, the transaction was strictly intrastate and not protected by the Commerce Clause. At the second trial, a verdict was directed for Bondurant and the case was then affirmed in the Court of Appeals. Dahnke-Walker then appealed to the United States Supreme Court. In reversing the judgment, and holding the state statute to be repugnant to the Commerce Clause, the court said:

> The commerce clause . . . expressly commits to Congress and impliedly withholds from the several states the power to regulate commerce among the latter. Such commerce is not confined to transportation from one state to another, but comprehends all commercial intercourse between different states and all the component parts of that intercourse. . . . Where goods are purchased in one state for transportation to another, the [interstate] commerce includes the purchase quite as much as it does the transporation." (Citations omitted) 257 U.S. at 290, 42 S.Ct. at 108.

The court looked to the practice and intent of the plaintiff and the general course of the business.

> The state court, stressing the fact that the contract was made in Kentuc-ky and was to be performed there put aside the further facts that the delivery was to be on board the cars and that the plaintiff, in continuance of its prior practice, was purchasing the grain for shipment to its mill in Tennessee. We think the facts so neglected had a material bearing and should have been considered. They showed that what otherwise seemed an intrastate transaction was a part of interstate commerce. The state court also attached some importance to the fact that after the grain was delivered on the cars the plaintiff might have changed its mind and have sold the grain at the place of delivery or have shipped it to another point in Kentucky. No doubt this was possible, but it was also improbable. . . . The essential character of the transaction as otherwise fixed is not changed by a mere possibility of that sort. (Citations omitted) 257 U.S. at 292, 42 S. Ct. at 109.

In a closely analogous case, the Supreme Court also relied upon the ordinary and traditional course of business as the factor which clearly fixed and determined the interstate character of the transaction. Lemke v. Farmers' Grain Co., 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458 (1922). In Shafer v. Farmers' Grain Co., 268 U.S. 189 (1925), the court held at 198, 199, 45 S.Ct. 481 at 485, 69 L.Ed. 909:

> Buying for shipment, and shipping, to markets in other states, when conducted as before shown, constitutes interstate commerce; the buying being as much a part of it as the shipping. . . . Wheat . . . is a legitimate article of commerce and the subject of dealings that are nation-wide. The right to buy it for shipment, and to ship it, in interstate commerce, is not a privilege derived from state laws, and which they may fetter with conditions, but is a common right, the regulation of which is committed to Congress and denied to the states by the commerce clause of the Constitution.

More recently, in United States v. Rock Royal, 307 U.S. 533, 568, 569, 59 S.Ct. 993, 1010, 83 L.Ed. 1446 (1939) the court observed "[i]t is urged that the sale, a local transaction, is fully completed before any interstate commerce begins. . . . But where commodities are bought for use beyond state lines, the sale is a part of interstate commerce." See also, Furst v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478 (1931).

Justice Holmes often explained that interstate commerce "is not a technical legal conception, but a practical one, drawn from the course of business." [8] Having reviewed the course of the cotton business, Congress declared as a matter of public policy that "[c]otton is the basic natural fiber of the Nation. It is produced by many individual cottongrowers throughout the various cotton-producing States of the Nation. Cotton moves in large part in the channels of interstate and foreign commerce and such cotton which does not move in such channels directly burdens or affects interstate commerce in cotton and cotton products. All cotton produced in the United States is in the current of interstate or foreign commerce or directly burdens, obstructs, or affects interstate or foreign commerce in cotton and cotton products." 7 U.S.C.A. § 2101. As a legislative finding, Congress has also determined that "American cotton is a basic source of clothing and industrial products used by every person in the United States and by a substantial number of people in foreign countries. American cotton is sold on a world-wide market and moves from the places of production almost entirely in interstate and foreign commerce to processing establishments located throughout the world. . . ." 7 U.S.C.A. § 1341.

There is no significant amount of cotton milling in Mississippi: [9] ours is a cotton producing state. As a practical matter in the cotton industry, Mississippi cotton almost invariably has an out-of-state destination.

## F. APPLICATION OF THE LAW

[9] Applying clear Congressional declarations of policy and what we regard as the controlling precedent expressed in *Dahnke-Walker, supra,* we hold that the interstate character vel non of these particular transactions must be judged in light of the recognized course of the cotton business. If, in view of the cotton trade and the relevant facts, it can be shown that the cotton was bought for the purpose of interstate shipment, then the transaction is one in interstate commerce and, by virtue of Mississippi law itself, the plaintiffs are not barred from this court. The fact that, as to the defendants, the transactions were completed in Mississippi, or that the cotton might have been diverted intrastate, or that the cotton temporarily came to rest in Mississippi before being loaded on board carriers cannot alter the nature of a transaction otherwise in interstate commerce.

As in *Dahnke-Walker,* the contracts in these cases were negotiated and executed in the forum state, the commodity was to be delivered by the seller and paid for by the buyer in Mississippi, and the commodity involved was one of nationwide and worldwide importance. The delivery was to be made either on board a truck or at a gin from whence the commodity would be removed once trucks became available.

In *Cone,* as in *Dahnke-Walker,* the commodity was to be transported beyond state lines for the use of the purchaser in the operation of its own mills, and is thus a transaction in interstate commerce. Allenberg does not purchase cotton for its own use, but for resale to others. In *Allenberg,* according to the

8. Swift & Co. v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 280, 49 L.Ed. 518 (1905); see also, Eureka Pipe Line Co. v. Hallanan, 257 U.S. 265, 42 S.Ct. 101, 66 L.Ed. 227 (1921).

9. U. S. Department of Agriculture, Supplement for 1972 to Bulletin No. 417—Statistics on Cotton and Related Data, 1930–67, p. 58–77.

general práctice of the industry, the commodity became a part of interstate commerce when it was purchased by Allenberg.

These particular transactions did not constitute doing business in Mississippi for the purposes of the penalty statute because they are exempt transactions under the interstate commerce exception adopted by the Mississippi Legislature. Accordingly, the motions to dismiss are not well taken.

## G. OTHER GROUNDS FOR DISMISSAL

**(1) Cone Mills v. Hurdle, et al, WC 73–91–S**

 Defendants in *Cone* have moved to dismiss the action on the ground that the subject contracts are unconscionable on their faces. Defendants cite Miss. Code Ann. § 75–2–302 (1972).[10] The Fifth Circuit has repeatedly held that the district court runs a great risk of reversal in dismissing an action on pleadings alone. In Thompson v. Allstate Insurance Company, 476 F.2d 746, 749 (5th Cir. 1973), the court said:

> We have consistently held that under the Federal Rules of Civil Procedure, a motion to dismiss ·for failure to state a claim should not be granted "unless it appears to a certainty that the plaintiff would be entitled to no relief under any set of facts which could be proven in support of his claim."

The Mississippi statute, supra, expressly provides for an evidentiary hearing to establish the commercial setting, purpose and effect of the contract as an aid to the court in its determination of whether the contract, or some clause thereof, is in fact unconscionable. The court concludes that the motion is not well taken on the ground that the contracts, or portions of the same, are unconscionable.

There are other grounds for dismissal set forth in the motion. Without entering into a discussion of each ground upon which defendants rely, suffice to say that the court does not find that the motion should be sustained in any respect.

**(2) Allenberg Cotton Co., Inc. v. Coleman, et al, EC 73–89–S**

Each defendant has filed a motion and an amended motion to dismiss the complaint or certain counts thereof. These contain grounds other than that plaintiff cannot prosecute the action because of its failure to qualify to do business in Mississippi as a foreign corporation. When the motions are considered in light of the rule announced in Thompson v. Allstate Insurance Company, *supra,* the court is convinced that each motion should be overruled.

## H. OTHER PENDING MOTIONS IN ALLENBERG V. COLEMAN, SUPRA

**(1) More Definite Statement and Separate Trials.**

Each defendant has moved for a more definite statement and for a separate trial. The court has determined that these motions are not well taken and should be overruled. At a later date it may appear that there is some substance to the motions for separate trials. At this stage of the proceedings, however, the court can see none. Defendants may renew these motions for separate trials if and when circumstances crystalize to such an extent that further consideration to the requests should be given.

---

10. This section provides in its entirety:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

The complaint, in the opinion of the court, is sufficient to state a cause of action and to identify the transactions giving rise to the litigation in such detail as to apprize each defendant of the nature and subject matter of the suit. This is all that is required by Rule 8(a), F.R.Civ.P. The rules provide ample means whereby defendants can obtain any pertinent information in regard to the action which they desire. They have only to utilize discovery procedures.

(2) Absence of Indispensable Parties.

Defendants seek to dismiss the action because of the absence of indispensable parties. The contracts were executed for Allenberg through its agent, Bluff City Cotton Company, Inc. (Bluff City), a Tennessee corporation. Defendants contend that Bluff City is an indispensable party. The court has concluded that this position is not well taken.

Bluff City acted only as Allenberg's agent in the subject transactions, and, as such, has no interest in the outcome of the litigation. Allenberg is shown by the contracts as the purchaser of the cotton, and Bluff City as Allenberg's agent. An agent who makes a contract and discloses the name of his principal does not incur any personal liability on the contract. Chipman v. Lollar, 304 F.Supp. 440 (N.D.Miss.1970). Bluff City, as the agent of Allenberg, is not, in the opinion of the court, a proper party to the action, much less an indispensable one.

Kenneth Coleman and David Coleman are shown to be members of the partnership of "Coleman Farms". The plaintiff sued R. W. Coleman, the remaining partner, doing business as "Coleman Farms". Defendants contend that Kenneth Coleman and David Coleman are indispensable parties, and that the court should not proceed without them being made parties to the action. Both of these parties are citizens of the Northern District of Mississippi and are amenable to process herein. This being true, the remedy, should the court hold them to be indispensable parties, is not to dismiss the action, but to direct plaintiff to join them as parties defendant. Rule 19(a) F.R.Civ.P. provides in part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

See 3A, Moore's Federal Practice, § 19.19 at page 2583; and Wright and Miller, Federal Practice and Procedure, Civil § 1609.

The court does not, however, consider that Kenneth Coleman and David Coleman are indispensable parties. The law is settled in Mississippi that general partners are jointly and severally liable for partnership obligations. Shemper v. Hancock Bank, 206 Miss. 775, 40 So.2d 742, 744 (1949). It follows, therefore, that one or more partners may be sued on a partnership obligation without joining all partners in the suit. The court holds that a dismissal is not the proper course for the court to take in this matter.

## CONCLUSION

Appropriate orders will be entered in both actions to effectuate the holdings of the court as herein set forth.