**MADDEN MANAGEMENT, INC., Plaintiff,**

v.

**FIRST EQUITIES CORPORATION, Columbus Associates, Ltd., and Columbus Associates Licensing, Inc., Defendants.**

**No. EC86–279–S–D.**

United States District Court, N.D. Mississippi, E.D.

Aug. 24, 1987.

C. York Craig, Jr. and Thomas Roe Frazer, II, Watkins, Ludlam & Stennis, Jackson, Miss., for plaintiff.

Rhesa H. Barksdale, John C. Henegan and E. Marcus Wiggs, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for defendants.

## OPINION

SENTER, Chief Judge.

This cause comes before the court on defendant First Equity Corporation's motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Both parties have submitted substantial quantities of evidentiary materials in the form of business records and affidavits taking the motion beyond the scope of the pleadings. The court will accordingly consider this motion under Rule 56. For the reasons stated below, the court denies the defendant's motion.

### Facts

Madden Management, Inc., is a Florida corporation with its principal place of business in Fort Walton Beach, Florida. Although Madden did not formally qualify to transact business in Mississippi until Sep-

tember 10, 1986, it entered into an agreement with Columbus Associates, Ltd., and Columbus Associates Licensing, Inc., on October 31, 1984, in which Madden would advise Associates and Licensing on the management of the Hilton Hotel in Columbus, Mississippi. The term of the contract was for ten years. Under this contract, Madden asserted a substantial degree of control over the operations and employees of the Columbus Hilton. All employment decisions were made by Madden[1] and substantially all of the purchasing and billing operations were performed at Madden's direction. Payments to employees and for purchases were made from accounts in Associates' name over which Madden had signature authority. Daily financial reports were submitted to Madden in Fort Walton Beach. Madden was to be compensated for its services by a flat monthly fee plus a percentage of the facility's profits.

Madden did not maintain any of its employees in Columbus on a regular basis and sent representatives as the need arose. Madden had no Mississippi bank accounts or facilities. All funds collected through Madden's billing and collections efforts were deposited into an account in Associates' name.

On August 24, 1986, First Equities terminated the contract between itself and Madden. On September 10, 1986, Madden qualified to do business in Mississippi. On September 19, 1986, Madden filed the cause *sub judice* with this court under 28 U.S.C. § 1332.

### Contentions of the Parties and Conclusions of Law

First Equities contends that Madden is barred from bringing this suit under Mississippi Code Annotated § 79–3–247 (1972). That section provides that

No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state. The failure of a

---

1. The handbook to the employees had Madden Management's name on the cover and provided that the employee agreed to obey the rules and regulations handed down by Madden Manage-

ment. Deposition testimony submitted by the defendants shows that many employees of the Columbus Hilton believed that they were employed by Madden Management.

foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any such action, suit or proceeding in any court of this state.

This section divests this court of jurisdiction in such instances because prohibitions against an exercise of jurisdiction by a state's courts apply to federal courts when sitting in diversity. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). Section 79-3-247 was interpreted by the Supreme Court of Mississippi to bar actions by corporations which subsequently qualified to do business but which were not qualified at the time of the incident giving rise to the suit. *Parker v. Lin-Co Producing Co.*, 197 So.2d 228 (Miss.1967).

Madden contends that it falls within the exceptions to the definitions of transacting business under Mississippi Code Annotated § 79-3-211 (1972). The pertinent portion of that section reads:

Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for purposes of this chapter, by reason of carrying on in this state any one or more of the following activities: (e) Transacting any business in interstate commerce.

The meaning of the phrase "interstate commerce" in this section is the same as that applied in determining whether activities are within the reach of the Commerce Clause of the Constitution of the United States. *Cone Mills Corp. v. Hurdle*, 369 F.Supp. 426, 431–32 (1974). The test of whether interstate commerce is involved is not whether the business is exclusively in interstate commerce but whether it substantially affects interstate commerce. *See Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). The defendant urges that the decision of the Supreme Court of Mississippi in *Barbee v. United Dollar Stores, Inc.*, 337 So.2d 1277 (1976), is controlling. In *Barbee*, the plaintiff

(United Dollar) was the grantor of a franchise to a local store owner. The franchise agreement gave United Dollar control over the franchisee's operations similar to that exercised by Madden in this cause. United Dollar was compensated for its services with a percentage of the profits from the operation, as is Madden in this cause. The factual situations are similar. But, as was stressed by Judge Smith, "Despite the fact that the state court must apply a federal standard, this court—as a federal forum—is not necessarily bound, even when sitting in a diversity case, by a prior determination of the highest state court on a matter arising under the Commerce Clause." *Cone Mills*, 369 F.Supp. at 432.

The operation of a hotel is integral to the transportation of people and goods between states and is inherently within the reach of the Commerce Clause. The Supreme Court of the United States stated in *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 258, 85 S.Ct. 348, 258, 13 L.Ed.2d 258, 269 (1964), that "It is said that the operation of the motel here is of a purely local character. But, assuming this to be true, '[i]f it is interstate commerce that feels the pinch, it does not matter how local the operation that applies the squeeze.'"

A similarly broad interpretation of the meaning of the phrase 'interstate commerce' has been applied by the Court to this very section of the Mississippi Code. *See Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). Here, as in *Allenberg*, the plaintiff maintains no office or bank accounts in Mississippi and has no employees in Mississippi. The defendant's own evidence shows that the activities of Madden in Mississippi were limited to two or three day visits to the hotel on a monthly basis for training of Associates' employees, auditing of financial records and inventories, and the inspection of Associates' facilities. The defendant relies instead on the extensive powers delegated to Madden by the contract. But the evidence indicates that these powers were exercised through the employees of Associates and Licensing, although occasionally

conducted under the name of Madden Management. The situation here is substantially different from that in *Eli Lilly & Co. v. Sav-On-Drugs*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), where a manufacturer maintained an eighteen-person sales force in the State of New Jersey in competition with solely intrastate wholesalers.

### Conclusion

In summary, the court concludes that the management of a hotel with its attendant duties in purchasing, collecting, and employment supervision is an activity sufficiently within the ambit of interstate commerce to place Madden Management's activities under the exceptions to Miss.Code Ann. § 79–3–211. Because Madden is exempt from § 79–3–211, the penalties in § 79–3–247 do not apply, and Madden is free to maintain this action.

An order in conformance with this opinion shall issue.